A96A1188. IN THE INTEREST OF K. B., a child.
(476 SE2d 875)

McMURRAY, Presiding Judge.

The Juvenile Court of Gwinnett County adjudicated K. B. a delinquent child after hearing proof that K. B. was a party to a shooting incident involving two delinquent acts (constituting two aggravated assaults if committed by a person other than a child). Specifically, evidence adduced at the adjudicatory hearing reveals that, at 10:00 p.m. on April 14, 1995, K. B. was in the company of six other youths, at least two of whom planned to assault a particular member of a group known as "the Bloods gang." After one of the youths, "R. W.," suggested tracking down and assaulting "D. M.," the targeted victim, K. B. and his associates rode to an area where D. M. was known to hang out. They soon spotted the victim and another

rival gang member. These two youths were alone, walking through a residential apartment complex. One of K. B.'s associates then stated — " 'We're going to go kill this slob' " — and the driver of the car (in which K. B. was a passenger) "pulled up on the curb . . ." near the victims. R. W. exited the car and called to the victim and his companion. K. B. and three or four others followed close behind and stood outside the car. The targeted victim and his associate instinctively moved away from this threatening assembly, but did not get far before gunshots rang out. One of K. B.'s associates had fired two shots from a handgun. The first bullet missed, but the second bullet hit its mark. The targeted victim fell to the ground, wounded through the neck. Two more rounds were fired at the rival gang members. This time, both bullets missed, and K. B. and his associates fled in the getaway car.

D. M. initially told Officer Matthew Daly of the City of Norcross Police Department "that the man or the kid who shot him was [R. W.]" At the adjudicatory hearing, Perry (Trey) Littlejon testified that he and three friends were walking up the street when they met K. B. "And [R. W.] and [D. L.] drove up in a car and [R. S.] said what you-all doing. He's like, 'We're fixing to go kill this slob.' " "[A slob is a] member of the Bloods [gang]." "So [R. S.] asked [D. L.] could Folks go with him and he said yeah. So we got in the car and we drove and we drove to Wind Brook and while we was driving the car, . . . [R. W.] told us that we was going to go look for him by Norcross School, and if we couldn't find him in Norcross School, we was going to go to his house and we was going to shoot his house up. . . . [W]e seen them walking in the street and [D. L.] and [R. W.] said, 'There they go, there they go, there they go.' " "And 'KB', he was sitting on the end of the car so he let everybody out." Perry Littlejon also testified that it was R. W. "who did the shooting[.]" But he conceded that he had originally given a taped statement to police where he "told [police] 'KB' shot him." Perry Littlejon explained giving this contradictory evidence "because there was a threat on [his] life." However, the victim's companion, "D. A.," testified that he recognized the driver of the car (not K. B.) "and [he] saw K. B. get out." The victim, D. M., testified that when he heard the first shot he "turned to [his] right and . . . looked. . . . Everybody was just standing there." D. M. saw " 'KB,' [R. W.], [D. L]. That was the only three." As [D. A.] bent over to help [D. M.,] . . . they fired two more shots. . . ." "L. S.," age 14, was in the car. He gave a statement to authorities "that 'KB' had the gun right after the shooting[.]" L. S. also affirmed "that 'KB' gave the gun to [R. W.] . . . [a]fter the shots were over." L. S. then clarified, "right after the shots were fired, [R. W.] had had the gun. And then we were talking in the car and stuff and [R. W.] had handed it back to 'KB', and . . . then he [K. B.] gave the gun to

[R. W.] and that's what [L. S.] saw." An audiotape of the original statement L. S. gave to police was played before the juvenile court. In that statement, L. S. related that after R. W. haled the intended victim, "everybody got out of the car except [L. S.] and [the driver]. . . . [L. S.] heard all of them talking and then 'KB' was like, man, f— it, and then pow, pow, pow." L. S. further identified State's Exhibits 15 and 16 as photographs of the gun he saw in the car that night.

Craig Watson, R. W.'s stepfather, testified that, after he heard of the shooting, he went to K. B.'s home "to see what happened because [his] son was locked up." "His [K. B.'s] father asked him what happened and then he [K. B.] proceeded to explain to us what happened. . . ." "In his [K. B.'s] words he said they were out, they were riding around and they saw the boy . . . and they went up to him and they were going to have an altercation and 'KB' said that somebody gave him a gun, and it was passed around and he got the gun and he shot four times and the boy fell and they all got back in the car and they left." Perry Psura Davis, Jr. also heard K. B. make this statement. K. B. testified in his own behalf and denied making this incriminating statement. This appeal followed the denial of K. B.'s motion for new trial. *Held*:

In his sole enumeration of error, K. B. challenges the sufficiency of the evidence, arguing that his presence at the crime scene is insufficient to authorize a determination that he was a willing participant in the above-described delinquent acts.

"Under the Juvenile Code, 'the standard of proof on charges of a criminal nature is the same as that used in criminal proceedings against adults — proof must be beyond a reasonable doubt. (Cits.)' *M. W. W. v. State of Ga.*, 136 Ga. App. 472, 474 (221 SE2d 669) (1975)." *In the Interest of T. S.*, 211 Ga. App. 46 (2) (438 SE2d 159). " 'While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of [the commission of the crime as] being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.' (Citations and punctuation omitted.) *Griggs v. State*, 208 Ga. App. 768, 769 (1) (432 SE2d 591) (1993); *Tucker v. State*, 205 Ga. App. 683, 684 (423 SE2d 422) (1992). Further, a person is a party to a crime and may be charged with and convicted of commission of the crime if he intentionally aids or abets in the commission of the crime. OCGA § 16-2-20." *Grace v. State*, 210 Ga. App. 718 (1), 719 (437 SE2d 485).

Although there is evidence in the case sub judice that K. B. merely sat in the back seat of a car on the night of the incident in question and did nothing while his companions planned and executed assaults upon the targeted victim, there is other testimony that K. B. knew of R. W.'s plans and willingly joined him before

entering the car. K. B. was the first to follow R. W. out of the getaway car at the crime scene. There is also evidence authorizing the conclusion that K. B. encouraged the initiation of gunfire before he returned to the getaway car. There is evidence that he handled the gun after the shootings and remained with his associates (watching television) for some time after the shootings. This evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the juvenile court's determination, beyond a reasonable doubt, that K. B. committed the alleged delinquent acts by aiding in and abetting the shooting assaults in question. *In the Interest of J. S. S.*, 168 Ga. App. 340 (2) (308 SE2d 855). See generally *Cargill v. State*, 256 Ga. 252 (1), 253 (347 SE2d 559); *Johnson v. State*, 188 Ga. App. 411, 412 (2) (373 SE2d 93). As the juvenile court did not err in adjudicating K. B. delinquent and providing him with rehabilitation and treatment according to law, the enumeration of the general grounds is without merit.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED OCTOBER 9, 1996.

*Rich, Smith & McCoy, Michael T. Smith*, for appellant.

*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.